**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**E. CORNELL MALONE CORP.**                    **CIVIL ACTION**

**VERSUS**                                     **CASE NO. 12-0361**
                                                         **12-0823**

**SISTERS OF THE HOLY FAMILY, ST. MARY'S**     **SECTION: "G" (5)**
**ACADEMY OF THE HOLY FAMILY, WESTERN**
**SURETY COMPANY, AND SAFECO INSURANCE**
**COMPANY OF AMERICA**

<u>**ORDER AND REASONS**</u>

Before the Court is the Motion to Sever and Stay[1] filed by defendant and third-party plaintiff, St. Mary's Academy of the Holy Family ("St. Mary's"),[2] wherein St. Mary's requests that third party defendant Satterfield & Pontikes Construction Group, L.L.C.'s ("S&P") claims be severed and stayed pending resolution of claims asserted in the matter pending in the Civil District Court for the Parish of Orleans (hereinafter, the "CDC"). Having considered the motion, the memorandum in support, the response, the reply, the record, and the applicable law, the Court will sever and stay S&P's claims.[3]

<u>**I. Background**</u>

***A. Factual Background***

This case arises from a dispute regarding a construction project for a new St. Mary's Academy Permanent High School Campus, located in New Orleans, Louisiana.[4] St. Mary's

---

[1] Rec. Doc. 45.

[2] St. Mary's was incorrectly named as Sisters of the Holy Family, St. Mary's Academy of the Holy Family.

[3] Specifically, the Court will sever and stay the claims asserted by S&P in its Answer to Third-Party Demand and Counterclaim. *See* Rec. Doc. 37.

[4] Rec. Doc. 1 at ¶ 7.

entered into a construction contract for the construction of the campus with a general contractor, S&P,[5] who in turn entered into a subcontract with the plaintiff, E. Cornell Malone, Corp. ("Malone"), for the performance of a portion of the work on the construction project.  Funding for the project was provided by the Federal Emergency Management Agency ("FEMA"), with funds paid to the State of Louisiana through the Governor's Office of Homeland Security and Emergency Preparedness ("GOHSEP").[6]  GOHSEP administers the funds and pays the applicant, here St. Mary's.[7]

For the construction project, Western Surety Company ("Western") and Safeco Insurance Company of America ("Safeco"), as sureties to S&P, issued a $31,800,000.00 payment bond (hereinafter, the "payment bond"), obligating themselves to pay S&P's debts with respect to work on the project.[8]  During the course of the construction, Malone entered into a $1,280,000.00 subcontract with S&P to perform roofing for the construction project.[9]  Malone alleges that it "fully and satisfactorily performed its scope of work under the terms of the Subcontract and in compliance with the Project's plans and specifications applicable to Malone's scope of work."[10]  Malone also alleges that it timely submitted invoices to S&P throughout the course of the construction project but that $134,236.73 remains due to Malone for work performed.[11]

---

[5] *Id.* at ¶ 8; Rec. Doc. 23 at p. 3.

[6] Rec. Doc. 9-2 at p. 2.

[7] *Id.*

[8] Rec. Doc. 1 at ¶ 9; Rec. Doc. 19-3; Rec. Doc. 23 at pp. 3-4.

[9] Rec. Doc. 1 at ¶ 10; Rec. Doc. 23 at p. 4.

[10] Rec. Doc. 1 at ¶ 11.  *See also* Rec. Doc. 23 at p. 4 ("The fact that Malone's work conformed to the requirements of the plans, specifications, and contract documents is evidenced by the fact that the construction project was accepted as complete by the Owner.  In fact, the Defendants herein do not allege or claim that Malone's work was incomplete or deficient in any way.").

[11] Rec. Doc. 1 at ¶¶ 12-13.  *See also* Rec. Doc. 23 at p. 4.

**B.  *Procedural Background***

   *1.  Procedural Background in State Court*

On June 22, 2011, Gootee Construction, Inc. filed suit against St. Mary's in the CDC in a matter entitled *Gootee Construction, Inc. v. St. Mary's Academy of the Holy Family* (hereinafter, the "Gootee Suit").  The Gootee Suit arises out of the same construction project that is the subject of this litigation, generally involving claims against St. Mary's for job cost overruns and other non-payment issues.  St. Mary's filed a Third Party Demand in the Gootee Suit against S&P for breach of contract and other causes of action.  Thereafter, in September of 2011, S&P filed suit against GOHSEP, St. Mary's, Three Fold Consultants, LLC ("Three Fold"), and Rozas-Ward/A.I.A Architects, Inc. ("Rozas-Ward") in the 19th Judicial District Court, East Baton Rouge Parish, for work done on the construction project (hereinafter, the "S&P suit").[12]   On April 9, 2012, the S&P suit was transferred to the CDC and consolidated with the Gootee suit.

   *2.  Procedural Background in Federal Court*

On February 25, 2011, Malone "filed and recorded with the Clerk of Court and Recorder of Mortgages for the Parish of Orleans, an *Affidavit and Sworn Statement of Amount Due and Statement of Claim or Privilege*," thereby creating a lien and privilege on the property where Malone performed the roofing work on the construction project.[13]   Malone filed an amendment to the affidavit on March 16, 2011, in which it added an additional claim supplementing the first privilege.[14]

---

[12] Rec. Doc. 9-4 at p. 1.

[13] Rec. Doc. 1 at ¶ 15; Rec. Doc. 19-1; Rec. Doc. 23 at pp. 4-5.

[14] Rec. Doc. 1 at ¶ 16; Rec. Doc. 19-2; Rec. Doc. 23 at p. 5.

On February 6, 2012, Malone filed suit against defendants St. Mary's, Western, and Safeco in the Eastern District of Louisiana.[15]  Malone alleges a claim against St. Mary's, secured by the privileges entered on the immovable property, under the provisions of La. Rev. Stat. § 9:4801, *et seq.*[16]  Moreover, Malone alleges that St. Mary's remains liable, even though Western and Safeco issued payment bonds for the construction project, because the notice and bond were not properly and timely filed in accordance with La. Rev. Stat. § 9:4811.[17] Additionally, Malone alleges claims against Western and Safeco on the payment bond under the terms of the payment bond itself, the Louisiana Private Works Act,[18] and Louisiana law regarding sureties.[19]  Malone has specifically stated that it "did not and has not sued S&P on or under the Malone Subcontract."[20]   Having inadvertently omitted the exhibits referenced in Malone's complaint, on April 25, 2012, Malone filed an unopposed motion for leave to file the exhibits,[21] which this Court granted.[22]

Western and Safeco filed a Motion to Dismiss, Alternatively to Stay Proceedings[23] on March 22, 2012, wherein they asserted that the action should be stayed or dismissed due to improper venue, a pending state court action, or the prematurity of the suit based on specific

---

[15] Rec. Doc. 1.

[16] *Id.* at ¶ 17.

[17] *Id.* at ¶ 18.

[18] La. Rev. Stat. § 9:4801, *et seq.*

[19] La. Civ. Code art. 3035, *et seq.*

[20] Rec. Doc. 23 at p. 5.

[21] Rec. Doc. 19.

[22] Rec. Doc. 22.

[23] Rec. Doc. 9.

provisions in the subcontract entered into between Malone and S&P.  This Court denied the motion to dismiss on May 23, 2012.[24]

On March 30, 2012, St. Mary's filed its answer, asserting a third party demand against S&P and cross claims against Western and Safeco.[25]  Therein, St. Mary's asserted that S&P failed to perform its work in a good and workmanlike manner, that S&P failed to complete the construction within the time specified in the contract, and that St. Mary's made all payments that were due and owing under the contract for work performed by S&P and Malone.[26]  Against Western and Safeco, St. Mary's asserted that Western and Safeco, as sureties, must indemnify St. Mary's to the extent that St. Mary's is liable to Malone for amounts not paid for Malone's work on the construction project.[27]  Western and Safeco filed a second motion to dismiss or stay the cross claims asserted by St. Mary's,[28] and S&P filed a motion to dismiss or stay the third party demand or for a more definite statement, in which S&P also asserts a counterclaim against St. Mary's.[29]  The Court denied Western, Safeco and S&P's motions on June 7, 2012,[30] referencing the reasons set forth in the May 23, 2012 order denying the first motion to dismiss.[31]

On June 21, 2012, S&P answered the third party demand filed by St. Mary's and asserted counterclaims alleging, among other things, failure to pay for work performed and delays caused, breach of contract, and maladministration of the construction project.[32]  St. Mary's filed an

---

[24] Rec. Doc. 33.

[25] Rec. Doc. 12.

[26] *Id.* at ¶¶ 32-36.

[27] *Id.* at ¶¶ 48-50.

[28] Rec. Doc. 29.

[29] Rec. Doc. 30.

[30] Rec. Doc. 34.

[31] Rec. Doc. 33.

[32] Rec. Doc. 37.

answer to S&P's counterclaims on July 6, 2012.[33]  St. Mary's filed the instant Motion to Sever and Stay S&P's counterclaims on August 3, 2012.[34]  S&P opposed the Motion to Sever and Stay on August 22, 2012,[35] and St. Mary's filed its reply on August 31, 2012.[36]

### 3.  Procedural Background Subsequent to Submission of the Instant Motion

On September 4, 2012, the Court consolidated Civil Action No. 12-0361 (hereinafter, "No. 12-0361") with Civil Action No. 12-0823,[37] in which Builder's Iron, Inc. ("Builder's Iron") also sought payment for work performed on the construction project from Western and Safeco under the provisions of the payment bond and Louisiana Civil Code article 3035, *et. seq.*[38]  Also on September 4, Western and Safeco filed counterclaims against St. Mary's in No. 12-0361, which assert claims identical to those S&P asserted in its counterclaims against St. Mary's.[39]  Western and Safeco also filed third party complaints against Three Fold and Rozas-Ward, the project manager and architect, respectively.[40]  In response to being pulled into this litigation by Western and Safeco, Rozas-Ward filed a Motion for Leave to File Third Party Complaints against Mayer & Associates, Inc., Carubba Engineering, Inc., Jolly Consultants, Inc. and Davillier Law Group.[41]  This Court held a status conference on October 2, 2012 to resolve

---

[33] Rec. Doc. 40.

[34] Rec. Doc. 45.  On August 7, 2012, the Court denied St. Mary's Motion to Expedite hearing of the Motion to Sever and Stay S&P's counterclaims, but provided that the Court would amend the Scheduling Order to allow all amendments to pleadings, third-party actions, crossclaims, and counterclaims to be filed within fourteen days of the Court's ruling on the instant motion.  *See* Rec. Doc. 48.

[35] Rec. Doc. 61.

[36] Rec. Doc. 67.

[37] Rec. Doc. 68.

[38] Civil Action No. 12-0361, Rec. Doc. 1.

[39] Rec. Doc. 72.

[40] Rec. Doc. 75.

[41] Rec. Doc. 97.

conflicting information conveyed to this Court.[42]   The Court continued the submission date of the Motion to Sever and Stay and set the Motion for Leave for hearing on October 24, 2012. After the October 2, 2012 status conference by telephone, Malone, Builder's Iron, and Rozas-Ward filed four additional motions in support of St. Mary's Motion to Sever and Stay.[43]   St. Mary's filed another Motion to Sever and Stay reflecting the additional claims asserted by Western and Safeco, which are also pending in the CDC.[44]

## II. Parties' Arguments

### A.  Motion to Sever

St. Mary's argues that severance is governed by Federal Rule of Civil Procedure 21, which provides that any claim against a party may be severed and proceeded with separately.  St. Mary's contends that this Court has broad discretion to sever claims based on the United States Court of Appeals for the Fifth Circuit's ruling in *Brunet v. United Gas Pipeline, Co.*[45] Accordingly, this Court may even sever a claim where the requirements of Rule 20(a) for permissive joinder are satisfied.[46]  St. Mary's urges the Court to consider the following factors to determine if a claim should be severed:

> (1) Whether the claim arose out of the same transaction or occurrence; (2) whether the claims present common questions of law or fact; (3) whether settlement or judicial economy would be promoted; (4) whether prejudice would be averted by severance; and, (5) whether different witnesses and documentary proof are required for separate claims.[47]

---

[42] Rec. Doc. 111.

[43] Rec. Docs. 103, 104, 105.

[44] Rec. Doc. 106.

[45] 15 F.3d 500, 505 (5th Cir. 1994).

[46] *United States v. O'Neil*, 709 F.2d 361, 369 (5th Cir. 1983).

[47] Rec. Doc. 45-1 at p. 4 (citing *Vaz v. Allstate Prop. & Gas Co.*, No. 1:06CV481, 2006 WL 2583733, at *1(S.D. Miss. Sept. 6, 2006).

However, according to St. Mary's, "severance is mandated where 'different injuries, different damages, different defensive postures and other individualized facts will be so dissimilar as to make the management of the case [joined] under Rule 20 impractical.'"[48]  St. Mary's argues that the application of these factors weighs heavily in favor of severance.

First, St. Mary's avers that S&P's claims do not arise out of the same transaction or occurrence as Malone's limited payment bond claims or St. Mary's indemnification claims. Second, S&P's claims include demands for non-payment, so the analysis will include different questions of fact and law than the adjudication of Malone's payment bond claims and St. Mary's limited indemnification claim.  Third, St. Mary's will suffer undue prejudice if forced to defend itself in a single trial against multiple claims involving different factual scenarios.  Finally, St. Mary's contends that different witnesses and documentary proof would also be required if S&P's claims are not severed.  Thus, the sheer volume of evidence may lead to jury confusion.[49]  In summary, St. Mary's claims that S&P is trying to avoid the forum selection clause in its contract with St. Mary's, which requires S&P to resolve all disputes in the CDC, by commandeering Malone's suit with claims identical to those being adjudicated in the CDC.

In the Opposition to Motion to Sever and Stay,[50] S&P notes that Federal Rule of Civil Procedure 21 allows for severance when it "will further convenience or avoid prejudice, or when separate trials will be conducive to expedition or economy."[51]  Given the lack of standards provided by Rule 21, S&P suggests that courts look to Rule 20 for guidance in determining if

---

[48] Rec. Doc. 45-1 at p. 4 (quoting *Pittman v. Purdue Pharma. Co.*, No. 3:03cv152BN, 2004 U.S. Dist. LEXIS 9840, at *16 (S.D. Miss. Mar. 12, 2004)).

[49] St. Mary's cites *Bailey v. N. Trust Co.*, 196 F.R.D. 513, 518 (N.D. Ill. 2000), for the proposition that severance is warranted if joinder will lead to jury confusion.

[50] Rec. Doc. 61.

[51] *Id.* at p. 3.

severance is appropriate.[52]   According to S&P, *Corkern v. Hammond City*[53] states that "the impulse under the Rules is toward entertaining the broadest possible scope of action consistent with fairness of the parties; joinder of claims, parties and remedies is strongly encouraged."[54]

S&P and St. Mary's agree on the five factors a court should consider when determining whether a claim should be severed,[55] but S&P argues that these factors weigh against severance and directs the Court's attention to two cases where district courts held that severance was not proper.  First, in *Xavier v. Belfor Group USA, Inc.*,[56] the plaintiff filed suit against Belfor Group USA, Inc. ("Belfor") and Tico Construction, LLC ("Tico"), a subcontractor of Belfor, for violations of the Fair Labor Standards Act ("FLSA").   Belfor subsequently filed a crossclaim against Tico, seeking indemnity from Tico to the extent Belfor owed the plaintiff any wages.   In response, Tico asserted a counterclaim against Belfor, alleging that Belfor failed to pay Tico for work performed.   This Court denied Tico's motion to sever the incidental demands noting the following factors: (1) the principal and incidental claims involving Tico's payment of wages rose out of the same transaction or occurrence and involved common questions of fact; (2) the settlement of claims was a neutral factor because Belfor and Tico could settle their claims against each other whether those claims were pending in the *Xavier* matter or a separate action; (3) judicial economy was best served by keeping the cases consolidated; (4) witnesses and

---

[52] *Id.* (citing *Corkern v. Hammond City*, No. 11-1828, 2012 WL 2597561, at *2 (E.D. La. July 5, 2012) (Milazzo, J.) (citing *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010)) (explaining that joinder of plaintiffs is permissible under Rule 20 when the claims arise out of the same transaction, occurrence, or series of transactions or occurrences, and when there is a at least one common question of law or fact linking all claims)).

[53] 2012 WL 2597561.

[54] *Id.* at p. 4 (quoting 2012 WL 2597561, at *2 (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966))).

[55] *Id.* (citing *Kreger v. General Steel Corp.*, No. 07-575, 2011 WL 1594839, at *2 (E.D. La. Apr. 25, 2011) (Berrigan, J.)).

[56] Nos. 06-491, 06-7084, 2008 WL 4862549 (E.D. La. Sept. 23, 2008) (Zainey, J.).

evidence in both the principal and incidental demands would be the same because the plaintiff would have to prove that it was not paid by Tico in order to prove the FLSA claim, which would trigger the obligation under the indemnity provision; and (5) Tico's would be exposed to the same inconvenience and delay regardless of Belfor's counterclaim because it was a named defendant in the consolidated action.[57]

S&P avers that the instant matter is nearly identical to *Xavier*, because: (1) the principal demand on the payment bond and S&P's counterclaims are based upon St. Mary's alleged failure to pay for the work performed on the construction project; (2) the indemnity provision will only be triggered when St. Mary's is found liable to Malone; (3) the claims arise out of the same transaction or occurrence and have common questions of fact and law; (4) the witnesses and evidence in the demands would be the same; and St. Mary's is a defendant in the lawsuit regardless of whether S&P's counterclaims are severed.[58]   Additionally, S&P notes that St. Mary's chose to include S&P in the instant lawsuit; therefore, S&P should be able to assert its counterclaims against St. Mary's.[59]

In reply,[60] St. Mary's explains that *Xavier* is inapplicable to the instant matter because *Xavier* involved claims arising out of the same transaction or occurrence—Tico's failure to pay its employees.[61]   According to St. Mary's, the plaintiff in *Xavier* sued defendant-contractor, Tico, and defendant-owner, Belfor, for failure to pay for work performed.[62]   Belfor filed a third party demand against Tico, seeking indemnification, a declaration of entitlement to withhold sums

---

[57] *Id.* at *3-4.

[58] Rec. Doc. 61 at p. 6.

[59] *Id.*

[60] Rec. Doc. 67.

[61] *Id.* at p. 2.

[62] *Id.*

owed, and offset for indemnification.[63]  Tico counterclaimed for amounts Belfor allegedly failed to pay, and then sought severance of Belfor's third-party demand and Tico's counterclaim.[64]  The instant case is different from *Xavier*, because St. Mary's has only sought indemnification from S&P for amounts St. Mary's may be required to pay Malone following judgment.[65]  According to St. Mary's, Malone's demand and St. Mary's indemnification claim arise only from S&P's failure to pay Malone, and the indemnity provision will only be triggered if St. Mary's is held liable for amounts S&P (not St. Mary's) has refused to pay.[66]  Moreover, S&P's claims against St. Mary's, Rozas-Ward, and Three Fold do not relate to S&P's failure to pay Malone.[67]  Instead, S&P's claims against St. Mary's concern St. Mary's alleged refusal to pay change orders unrelated to Malone, and the claims against Rozas-Ward and Three Fold concern improper administration of funds and contracts.[68]

Second, S&P relies on *Pepper v. SRO Concerts, Inc.*,[69] where the court refused to permit an attorney's request for severance of a legal malpractice claim the plaintiff asserted against the attorney.[70]  The court found that the claims were properly joined because the legal malpractice claim was logically related to the copyright claims against the other defendants, and "raise[d] many common questions of law and fact."[71]

---

[63] *Id.*

[64] *Id.*

[65] *Id.*

[66] *Id.* at p. 3.

[67] *Id.*

[68] *Id.*

[69] No. 90 Civ. 5902, 1992 WL 37091 (S.D.N.Y. Feb. 24, 1992).

[70] Rec. Doc. 61 at p. 6.

[71] *Id.* at 7.

According to S&P, the principal claim Malone asserts against St. Mary's is based upon St. Mary's failure to pay for work performed by S&P and Malone; whereas the incidental claim St. Mary's asserts against S&P is based upon S&P's purported faulty and untimely work, and the incidental claims S&P asserts against St. Mary's are based on St. Mary's non-payment for that work performed by S&P and its subcontractors.[72]   Thus, S&P argues that the transaction or occurrence that all claims are based on is the work performed by S&P and its subcontractors on the construction project, which means S&P's claims raise common questions of law and fact and rely on the same witnesses and exhibits at trial.[73]   Therefore, S&P contends that the Court should deny severance as in *Pepper*, because there are common questions of law and fact.  Moreover, S&P explains that it will be prejudiced if its claims against St. Mary's are severed given the allegations against S&P that St. Mary's makes in its third party complaint.[74]

In reply, St. Mary's argues that this legal malpractice case from the Southern District of New York is "wholly unrelated and has no bearing on the instant case."[75]

### B.  Motion to Stay

St. Mary's argues that a "district court has the inherent power to 'control the disposition of cases on its docket with economy of time and effort for itself, for counsel, and for litigants,'"[76]

---

[72] Rec. Doc. 61 at p. 7.

[73] *Id.*

[74] *Id.*

[75] Rec. Doc. 67 at p. 2.

[76] *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

which includes the "wide discretion" to grant a stay in favor of parallel state court actions[77] when "the interests of justice seem[ ] to require such action."[78]

St. Mary's contends that a stay is appropriate in this case for two reasons: (1) the similarity of the actions in this Court and the CDC; and (2) the necessity of amendments to St. Mary's complaint if a stay is denied.  First, St. Mary's explains that S&P's claims against St. Mary's, Three Fold, and Rozas-Ward in this lawsuit and in the parallel CDC action seek payment for work S&P and its subcontractors allegedly performed, of which St. Mary's disputes the quality and appropriateness.[79]  Thus, St. Mary's argues that it is in the parties' best interest to resolve these issues in one court, and, because S&P's claims in this case are "nearly identical" to those in state court, this Court should stay the instant suit pending resolution of the matter in the CDC.[80]  To demonstrate the similarity of the parallel actions, St. Mary's notes that S&P issued identical discovery to St. Mary's in both suits.[81]  Second, if S&P's claims are not stayed, St. Mary's "will be forced to amend its complaint to bring substantive claims against a number of additional subcontractors."[82]  St. Mary's contends that it must assert these third party demands against the subcontractors in order to protect its rights, but doing so would delay the progress of Malone's lawsuit, which began as only a payment bond claim.[83]

---

[77] Rec. Doc. 45-1 at p. 5 (citing *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *Am. Guar. & Liab. Ins. Co. v. Anco Insulations, Inc.*, 408 F.3d 248, 250-51 (5th Cir. 2005); *see also In re Ramu Corp.*, 903 F.2d 312, 318, (5th Cir. 1990)).

[78] *United States v. Kordel*, 397 U.S. 1, 12 n. 27 (1970). *See also Mayo v. Tri-Bell Indus.*, 787 F.2d 1007, 1012 (5th Cir. 2005).

[79] Rec. Doc. 45-1 at p. 6.

[80] *Id.*  The claims S&P asserts against Western and Safeco in this suit are also pending in state court.  In fact, Western and Safeco already sought a stay of those claims on May 23, 2012.  *See* Rec. Doc. 9.

[81] Rec. Doc. 45-1 at p. 6 (citing Exs. C & D).

[82] *Id.* (indicating St. Mary's would request leave to amend its complaint to include at least nine new parties, all of whom are parties in the CDC proceedings).

[83] *Id.* at p. 7.

In opposition to the instant motion, S&P relies heavily on this Court's earlier decision in this case to deny Western and Safeco's Motion to Stay St. Mary's claims for indemnification.[84] Specifically, S&P's quotes this Court as stating:

> [G]enerally . . . the pendency of an action in the state court is no bar to the proceedings concerning the same matter in the Federal court having jurisdiction. . . . [O]nly under truly exceptional circumstances may federal courts stay a case out of deference to the pending state court proceedings…. [A] court's discretion is heavily weighted in favor of exercising jurisdiction.[85]

S&P contends that exceptional circumstances do not exist here based on the six factors set forth in *Stewart v. Western Heritage Insurance Co.*[86]:

> (1) Assumption by either state or federal court over a res; (2) relative inconvenience of the forum; (3) avoidance of piecemeal litigation; (4) order in which jurisdiction was obtained by the concurrent forum; (5) to what extent federal law provides the rules of decision on the merits; and (6) the adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction.[87]

S&P explains that *Stewart* instructs this Court to carefully balance the important factors in a given case, and heavily weight the balance in favor of exercising jurisdiction.[88]

S&P argues that the first four factors weigh in favor of exercising jurisdiction.  As to the first factor, S&P contends that property has not been attached in this proceeding or the state court proceeding.[89]  Second, when the courts are in the same geographical locations, as the cases at issue here, the forum is less inconvenient and the second factors weighs against abstention.[90] S&P contends that the third factor weighs against abstention because a plea of *res judicata* in the

---

[84] Rec. Doc. 61 at p. 8 (citing Mot. to Stay, Rec. Doc. 9; Order & Reasons, Rec. Doc. 33).

[85] *Id.*

[86] 438 F.3d 488 (5th Cir. 2006).

[87] *Id.* at 491.

[88] Rec. Doc. 61 at p. 9 (citing 438 F.3d at 492).

[89] *Id.*

[90] *Id.*

pending litigation would eliminate any remaining issues and the potential problem of inconsistent judgments.[91]  S&P explains that courts look to how much progress has been made in the two actions in interpreting the fourth factor, and abstention is only favored when the federal case has not proceeded past the filing of the complaint.[92]  As the instant case has proceeded into written discovery and the Court has scheduled trial and the pretrial conference, S&P believes that the fourth factor weighs against abstention.[93]

S&P notes that the fifth and sixth factors are, at best, "neutral."[94]  According to S&P, "[t]he presence of state law issues weighs in favor of surrender only in rare circumstances."[95]  Therefore, the fifth factor is neutral because SMA has failed to show that exceptional circumstances exist warranting abstention.[96]  Finally, the sixth factor—the adequacy of the state proceeding to protect the rights of the party invoking federal jurisdiction—can only be a neutral factor or weigh against abstention.[97]  Thus, S&P contends that no single factor weighs in favor of abstention and four factors weigh in favor of exercising jurisdiction.[98]

In reply, St. Mary's agrees that "exceptional circumstances"[99] are required to warrant a stay of a pending federal court case in deference to parallel state court proceedings, but St. Mary's contends that the factors clearly weigh in favor of abstention.  First, allowing S&P's claims to proceed in both forums presents the possibility of piecemeal litigation and inconsistent

---

[91] *Id.*

[92] *Id.* (citing *Stewart*, 438 F.3d at 492).

[93] *Id.*

[94] *Id.* at p. 10.

[95] *Id.* (citing *Stewart*, 438 F.3d at 493).

[96] *Id.*

[97] *Id.*

[98] *Id.*

[99] Rec. Doc. 67 at p. 5 (quoting *Stewart*, 438 F.3d at 491).

judgments.[100]  Further, since the state court suit commenced on September 1, 2011 and S&P was

not named in this suit until March 30, 2012,[101] the state court was first to obtain jurisdiction.[102]

Finally, jurisdiction in this Court is based solely on diversity, so federal law does not provide the

basis of a decision on the merits.[103]  St. Mary's appears to yield that the first and sixth factors—

assumption over a res and adequacy of state proceedings—do not support abstention.

Nevertheless, St. Mary's argues that the majority of the factors point to the state court as the

more convenient and appropriate forum.[104]

　　　　In addition to arguing that the aforementioned factors weigh in favor of entering a stay,

St. Mary's makes two additional points favoring abstention.  First, St. Mary's notes that S&P has

reversed its position "having previously argued that the Court should stay the case 'pending

resolution of the similar claims that are currently pending in state court.'"[105]  According to St.

Mary's, S&P wants to litigate its claims in this Court now that S&P's claims originally filed in

the 19th Judicial District have been consolidated in Orleans Parish—where the parties agreed to

resolve all disputes under the contract.[106]  Second, although the state court suit seeks payment for

work that S&P and its subcontractors allegedly performed, and St. Mary's disputes the quality

and appropriateness of the work, St. Mary's has not made the quality of S&P's work an issue in

this case.  To the contrary, St. Mary's has limited its claims against S&P to indemnification

related to Malone's payment bond claim, and St. Mary's contends that S&P should not be

---

[100] *Id.* at p. 6.

[101] *Id.* The instant suit was filed on February 6, 2012, but S&P was not a party until March 30, 2012.

[102] Rec. Doc. 67 at p. 6.

[103] *Id.*

[104] *Id.*

[105] *Id.* at p. 4 (citing Rec. Doc. 27-3).

[106] *Id.*

allowed to use the "indemnification claim to bootstrap all of S&P's pending state law claims into this forum."[107]

### III.  Law and Analysis

#### A.  Motion to Sever

##### 1. Legal Standard

Motions to sever are governed by Federal Rule of Civil Procedure 21, which provides that "any claim against a party may be severed and proceeded with separately."[108]  This Court has "broad discretion to sever issues to be tried before it."[109]  Accordingly, a court's decision to sever a claim will be reviewed for abuse of discretion.[110] Although courts have looked to Rule 20 for guidance in the absence of any standards in Rule 21,[111] courts may sever claims even where the requirements of Rule 20(a) for permissive joinder have been satisfied.[112]  To determine whether a claim should be severed, a court may consider the following factors: (1) whether the claim arose out of the same transaction or occurrence; (2) whether the claims present common questions of law or fact; (3) whether settlement or judicial economy would be promoted; (4) whether prejudice would be averted by severance; and, (5) whether different witnesses and documentary proof are required for separate claims.[113]  It is notable, that the first two factors track the "two-prong test" created by Rule 20, which permits joinder of plaintiffs when "(1) the claims arise out of the same transaction, occurrence, or series of transactions or occurrences and when (2) there is at least one common question of law or fact linking all claims."[114]  Therefore, application of these five factors accounts for whether joinder was appropriate, but it also allows

---

[107] *Id.*

for the exercise of judicial discretion in instances where joinder was permissible but severance is warranted.

### 2. Analysis

Application of the factors in the instant case reveals that severance is appropriate.  First, the Court considers whether S&P's claims arose out of the same transaction or occurrence.  The Court does not find it appropriate to interpret the "transaction or occurrence" the claims arise out of as the entire scope of the construction project, as S&P would have the Court do.  Such an interpretation, in a case involving a construction project of such magnitude and involving so many components and parties, could yield completely unmanageable litigation.

Malone filed this suit to recover payment under the terms of the payment bond issued in connection with the construction project and caused a lien and privilege to be filed and recorded on the immovable property owned by St. Mary's pursuant to La. Rev. Stat. § 9:4802.[115]  St. Mary's seeks indemnity from S&P to the extent it is liable to Malone for any amounts not paid for Malone's work on the construction project.[116]  Therefore, Malone's principal demand and St. Mary's indemnification claim arise only from S&P's failure to pay Malone and the existing

---

[108] Fed. R. Civ. P. 21.

[109] *Brunet*, 15 F.3d at 505.

[110] *Acevedo*, 600 F.3d at 520 (citing *Jolley v. Welch*, 904 F.2d 988, 994 (5th Cir. 1990)).

[111] *Id.* at 521.

[112] *O'Neil*, 709 F.2d 369.

[113] *Vaz*, 2006 WL 2583733, at *1 (citing *Morris v. Northrop Grumman Corp.*, 37 F.Supp.2d 556, 580 (S.D.N.Y. 1999)); *Corkern*, 2012 WL 2597561, at *2 (citing *Kreger*, 2011 WL 1594839, at *2).

[114] *Acevedo*, 600 F.3d at 521 (citations omitted).  Even when the test for joinder is satisfied, district courts have the discretion to refuse joinder in the interest of avoiding prejudice and delay.  *Id.* (citing *Applewhite v. Reichhold Chems, Inc.*, 67 F.3d 571, 574 (5th Cir. 1995)).

[115] Although the payment bond was issued to S&P, Malone did not initially name S&P.  *See* Rec. Doc. 45-1 at p. 2.

[116] Rec. Doc. 12 at ¶ 39.

payment bonds.  In contrast, S&P's claims relate to St. Mary's alleged failure to pay change orders, St. Mary's breach of contract, and alleged improper administration of funds and contracts by Rozas-Ward and Three Fold.[117]  Essentially, the claims do not arise out of the same transaction or occurrence beyond a superficial level.

Although there may be some overlap, Malone's principal claim and S&P's incidental claims will present very different questions of law and fact.  To succeed in its claims, Malone will have to demonstrate, among other things, that it followed the proper procedures in acquiring and perfecting the lien and privilege, that it performed the alleged work, and the value of that work.  Litigating the principal claims and indemnification arising out of the payment bond will not require the litigation of the complex contractual and extensive factual issues arising out of the construction project, which must be addressed in the ongoing CDC ligation.  If S&P is permitted to proceed with its claims numerous other questions of law and fact, unrelated to Malone, will have to be decided, including questions pertaining to breach of contract, improper administration of funds and contracts, and delay in the work performed.  Therefore, the second factor also weighs in favor of severance.

Settlement or judicial economy will not be promoted by allowing the claims to proceed in one lawsuit here in federal court, and therefore the third factor weighs in favor of severance. S&P's claims not only introduce additional causes of action to the instant matter, but also incorporate two additional parties, Rozas-Ward and Three Fold.  Furthermore, if S&P's claims are not severed St. Mary's will have to amend its complaint to allege substantive claims against,

---

[117] *See* Rec. Doc. 37.  *See also* Rec. Doc. 67 at p. 3.

at least, nine additional subcontractors.  Permitting S&P's claims to remain joined will significantly impede the timely adjudication of Malone's claims and waste judicial resources.[118]

Severance would avert prejudice to Malone and St. Mary's.  Malone is not a party to the parallel actions in state court, and is not involved with S&P's claims against St. Mary's. Additionally, St. Mary's would be prejudiced by the need to amend its complaint and litigate against no less than nine additional parties in a lawsuit that originally involved a discreet claim to recover under a payment bond.  Severance prevents S&P from essentially hijacking Malone's lawsuit in order to pull numerous additional claims and parties into federal court, which would have been confined to the CDC by the forum selection clause contained in the contract between St. Mary's and S&P.[119]

The final factor, regarding whether the claim would require different witnesses and documentary evidence, also seems to weigh in favor of severance.  It appears to this Court that the additional causes of action S&P's claims introduce would require different witnesses and documentary evidence.  No evidence has been brought to the Court's attention that would warrant a finding that the same evidence supporting Malone's payment bond claim would support S&P's claims against St. Mary's, Rozas-Ward, and Three Fold.

The Court is not persuaded by S&P's argument that this case is nearly identical to *Xavier*, and therefore severance should be denied here as it was in *Xavier*.  However, *Xavier*, which did not involve a parallel state court action or a forum selection clause, is clearly distinguishable from the instant case.  S&P could not bring the claims it now seeks to assert in federal court initially, because the federal suit was prohibited by the forum selection clause in the contract

---

[118] Although not ruling on other pending motions at this time, the Court notes that if S&P's claims are not severed, the Court will need to permit the additional crossclaims and third-party complaints filed to remain.  *See* Rec. Docs. 97; 106-1 at p. 2.  Therefore, Western and Safeco would proceed with an unrelated crossclaim against St. Mary's, and Rozas-Ward would likely proceed with claims against four additional parties.  *Id.*

[119] Rec. Doc 45-1 at p. 3 (citing S&P's Contract, *id.* Ex. E at p. 5).

between St. Mary's and S&P.  S&P now seeks to use Malone's claim and St. Mary's demand for indemnification to avoid its forum selection clause.  Therefore, the Court declines to apply the reasoning set forth in *Xavier* to the instant matter.

Considering that all five factors seem to weigh in favor of severance and the broad discretion afforded this Court in severing claims, the Court finds that severance of S&P's claims is warranted.[120]

## B.  Motion to Stay Severed Claims[121]

### 1.  Legal Standard

There is no question that a district court has inherent power to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants,"[122] nor is there a question that this authority includes the district court's wide discretion to grant a stay in a pending matter.[123]  When "the interests of justice seem[] to require such action," a court may exercise its discretion to stay civil proceedings, postpone discovery, or impose protective orders and conditions.[124]

In *Colorado River Water Conservation District v. United States*,[125] the United States Supreme Court recognized that, in some circumstances, a federal court may stay or abstain from hearing a case due to the existence of parallel state court proceedings.  However, "[g]enerally . . .

---

[120] Answer to Third-Party Demand and Countercl., Rec. Doc. 37.

[121] St. Mary's moved to stay S&P's counterclaims against St. Mary's for non-payment, delay damages, breach of contract, and maladministration of the project.  *See* Rec. Doc. 37 at pp. 3-8.

[122] *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

[123] *In re Ramu Corp.*, 903 F.2d 312, 318 (5th Cir. 1990).

[124] *United States v. Kordel*, 397 U.S. 1, 12 n. 27 (1970); *see also Mayo v. Tri-Bell Indus.*, 787 F.2d 1007, 1012 (5th Cir. 1986).

[125] 424 U.S. 800 (1976).

the pendency of an action in the state court is no bar to the proceedings concerning the same matter in the Federal court having jurisdiction."[126]  Only under truly "exceptional circumstances" may federal courts stay a case out of deference to pending state court proceedings.[127]  To determine whether exceptional circumstances exist, courts carefully balance the following six factors[128]:

> (1) assumption by either state or federal court over a res; (2) relative inconvenience of the forum; (3) avoidance of piecemeal litigation; (4) order in which jurisdiction was obtained by the concurrent forum; (5) to what extent federal law provides the rules of decision on the merits; and (6) the adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction.[129]

Before the Court can even consider whether exceptional circumstances exist, the Court must first satisfy itself that the proceedings are parallel.[130]  Proceedings are parallel when they involve the same parties and the same claims.[131]


## 2. Analysis

The Court is convinced that S&P's counterclaims currently pending against St. Mary's in the instant suit are parallel to those claims pending in the CDC.  Neither St. Mary's nor S&P argues that S&P's claims in the instant suit are different from those pending in the CDC.  Indeed, S&P has itself previously sought a stay of these proceedings arguing that the lawsuit in the CDC

---

[126] *Id.* at 817.

[127] *Cnty. of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188-89 (1959).  *See also Stewart v. Western Heritage Ins. Co.*, 438 F.3d 488, 492-93 (5th Cir. 2006); *Mahbod v. New York Life Ins. Co.*, No. 05-3266, 2006 WL 2513423 (E.D. La. Aug. 25, 2006) (Fallon, J.).

[128] *Stewart*, 438 F.3d at 492.

[129] *Id.* at 491.

[130] *Hartford Accident & Indem. Co. v. Costa Lines Cargo Servs., Inc.*, 903 F.2d 353, 360 (5th Cir. 1990).

[131] *Am. Guarantee & Liab. Ins. Co. v. ANCO Insulations, Inc.*, 408 F.3d 248, 251 (5th Cir. 2005).

"arises out of the same facts as the instant lawsuit."[132]  St. Mary's explains that "S&P's counter-claim is precisely the same claims asserted in the State Court Suit, down to the identical wording."[133]  Moreover, S&P has "propounded precisely the same discovery on St. Mary's in the instant suit as it did in the State Court Suit.[134]  Having satisfied itself that the proceedings in the CDC and the instant litigation are parallel, the Court will now evaluate the six factors the parties agree should be applied to determine the propriety of staying S&P's claims.[135]

The first and second factors weigh in favor of declining to enter a stay in this matter.  The fact that no property has been attached in this proceeding or the state court proceeding weighs against entering a stay.  The Fifth Circuit explicitly rejected the contention that the absence of this factor is a neutral item in *Evanston Ins. Co. v. Jimco, Inc.*[136]  The relative inconvenience of the forum also weighs against staying claims, when, as here, the state and federal courthouses are in the same geographical location.  Both courthouses are located in New Orleans, Louisiana, so it would not be inconvenient to the parties to conduct parallel proceedings.[137]

As to the third factor, "*Colorado River* prevents 'piecemeal litigation, and the concomitant danger of inconsistent rulings with respect to a piece of property.'"[138]  Here, the potential for piecemeal litigation and inconsistent judgments exists as the state court is the only forum hearing many of the claims related to the construction project.  Contrary to S&P's contention, the fact that a plea of *res judicata* could "eliminate any remaining issues and the

---

[132] Rec. Doc. 30-3 at p. 3.

[133] Rec. Doc. 45-1 at p. 3.

[134] *Id.* (citing Exs. C, D).

[135] *See* Rec. Doc. 61 at p. 8; Rec. Doc. 67 at p. 5 n. 15.

[136] 844 F.2d 1185, 1191 (5th Cir. 1988); *see also Stewart*, 438 F.3d at 492.

[137] *See Murphy's v. Uncle Ben's, Inc.*, 168 F.3d 734, 738 (5th Cir. 1999) (finding that when both courts are in the same geographical area the inconvenience factor weighs against abstention).

[138] *Stewart*, 438 F.3d at 492 (quoting *Black Sea Inv. v. United Heritage Corp.*, 204 F.3d 647, 650-51 (5th Cir. 2000).

23

potential problem of inconsistent judgments"[139] does not render it improper for the Court to enter a stay.  Many additional claims, parties, and issues are currently involved in the litigation in the CDC, which are not before this Court.  Proceeding with S&P's claims could easily result in inconsistent judgments.  Therefore, the third factor favors entering a stay.

The fourth factor—order in which jurisdiction was obtained by the concurrent forum—favors staying the severed claims.  S&P filed its state court suit in September of 2011; whereas the instant lawsuit was not filed until February 6, 2012, and S&P was not named in the suit until March 30, 2012.  Nearly identical discovery in both cases with respect S&P's claims against St. Mary's has occurred in both suits.  In *Murphy*, the Fifth Circuit found this factor to weigh against entering a stay when the claims proceeded beyond the filing of a complaint and the suits were proceeding at the same pace.[140]  However, the suit is not proceeding at the same pace in this case.  The CDC obtained jurisdiction first and progress has presumably been made in the CDC litigation, but the suit has stalled in this Court while the various motions to sever and stay are addressed.  Further, because of a forum selection clause controlling where claims arising out of or relating to the construction contract between St. Mary's and S&P must be filed,[141] the claims S&P filed in the 19th Judicial District Court against GOHSEP, St. Mary's, Three Fold, and Rozas-Ward, among others, were recently transferred to the CDC.[142] Moreover, if the claims are not severed and stayed, the anticipated addition of numerous parties will further stall the progress of this case, and likely require the Court to reset many of the current dates and deadlines.  Therefore, this factor also weighs in favor of staying S&P's claims.

---

[139] Rec. Doc. 61 at p. 9.

[140] 168 F.3d at 738-39.

[141] *See* Rec. Doc. 45-6 at p. 2.

[142] *See* Rec. Doc. 45-3.

The Fifth Circuit has instructed that "[t]he presence of a federal law issue must always be a major consideration weighing against surrender of jurisdiction, but the presence of state law issues weighs in favor of surrender only in rare circumstances."[143]  This Court finds that such "rare circumstances" are present here.  There are no federal law issues in the pending case; Louisiana state law will provide all applicable rules and standards.  Even more significantly, S&P's counterclaims appear to be a procedural maneuver to avoid the forum selection clause contained in its contract with St. Mary's requiring all claims to be heard in the CDC.  Notably, S&P requested a stay in this matter when the state litigation was pending in the 19th Judicial District Court, but when that case was transferred to the CDC and consolidated with the Gootee suit, S&P changed its position, now opposing the stay and wishing to proceed with the litigation in this Court.  Because such rare circumstances exist here, the fifth factor also weighs in favor of entering a stay.

The final consideration, the adequacy of state proceedings in protecting the rights of the party invoking federal jurisdiction, can only be "a neutral factor or one that weighs against, not for, abstention."[144]  Here, S&P is invoking this Court's jurisdiction over its counterclaims.  The existence of the forum selection clause in a contract S&P negotiated supports a finding that the CDC will adequately protect S&P's rights.  Therefore, the CDC will be an adequate vehicle for resolution of S&P's claims, and this factor is neutral in the instant matter.

The third, fourth, and fifth factors weigh in favor of granting the motion to stay S&P's claims, while the first and second factors do not favor a stay and the sixth factor is neutral. However, the Fifth Circuit counseled against treating the factors as a "mechanical checklist."[145]

---

[143] *Evanston*, 844 F.2d at 1193 (internal quotations omitted) (citing *Moses H. Cone*, 460 U.S. at 26).

[144] *Id.* at 1193.

[145] *Stewart*, 438 F.3d at 491.

Instead, the Court must balance "the *important* factors as they apply in a given case."[146]  In this case, the Court finds the fourth and fifth factors to be the most important.  The existence of the forum selection clause and the clear implication from the record that S&P is attempting to rely on Malone's lawsuit to pull the CDC litigation into this Court in contravention of the forum selection clause now that S&P's lawsuit has been transferred from the 19th Judicial District, supports a finding that "exceptional circumstances" exist here to warrant a stay.  Moreover, the predominance of state law in this case, the commencement of litigation in the CDC long before federal court, and the progress of the CDC litigation also weigh in favor of staying S&P's claims.

## IV.  Conclusion

For the foregoing reasons,

**IT IS HEREBY ORDERED** that St. Mary's Motion to Sever and Stay[147] is **GRANTED**, and S&P's claims are severed and stayed pending resolution of the same claims asserted in Division "H" of the Civil District Court for the Parish of Orleans.

**NEW ORLEANS, LOUSIANA,** this   6th   day of February, 2013.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[146] *Id.* (emphasis added).

[147] Rec. Doc. 45.

26